James J. Manchee
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: § | 4:20-bk-40593 | |
| DAVID BRUCE HOWARD and § | | |
| SHANNON SEWELL HOWARD, § | CHAPTER 13 BANKRUPTCY | |
| § | | |
| Debtors. § | | |
| | | |
| DAVID BRUCE HOWARD and § | | |
| SHANNON SEWELL HOWARD, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| vs. § | ADVERSARY NO. _____ | |
| § | | |
| H.I. RESORT CONDOMINIUM § | | |
| ASSOCIATION, INC. and § | | |
| HVC-HIGHLANDS, LLC, § | | |
| § | | |
| Defendants. § | | |

**CORE ADVERSARY PROCEEDING COMPLAINT
FOR CIVIL CONTEMPT AND DAMAGES**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs David Bruce Howard and Shannon Sewell Howard ("Plaintiffs") and complain of H.I. Resort Condominium Association, Inc. ("RCA") and HVC-Highlands, LLC ("Hyatt") (collectively referred to as the "Defendants"). Plaintiffs respectfully show the following:

**I.   INTRODUCTION**

Plaintiffs bring this action for Defendants' violations of the automatic stay and seek actual damages, punitive damages, and legal fees and expenses against Defendants.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the claims in this adversary proceeding pursuant to 28 U.S.C. § 1331, 1334 and 1337(a), and 28 U.S.C. §§2201-2202. The Court has the authority to enter a final order regarding this contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b) (2)(A), (E), (G), (I), (J) and (O). Pursuant to Sections 1408, 1409, and 1391(b) of Title 28 of the United States Code, venue is proper in this district/division.

## III. PARTIES

2. Plaintiffs are the debtors in the above referenced case.

3. Defendant H.I. Resort Condominium Association, Inc. is a foreign non-profit corporation which may be served by sending certified mail to its registered agent CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA 95833.

4. Defendant HVC-Highlands, LLC is a foreign limited liability company which may be served by sending certified mail to its registered agent CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA 95833.

## IV. FACTUAL ALLEGATIONS

5. On February 28, 2020, Plaintiffs commenced the above-styled bankruptcy case ("Bankruptcy Case") by filing a Chapter13 Voluntary Petition, pursuant to 11 U.S.C. § 301, and an Order for Relief was entered in the Bankruptcy Case effective on the same day, pursuant to 11 U.S.C. § 301.

**A.    The Subject Claims were Included in Plaintiffs' Bankruptcy Case.**

6. Plaintiffs filed Schedules with their bankruptcy petition which included and detailed the claims at issue on a Hyatt Vacation Ownership timeshare. On Schedule "D" of Plaintiffs' bankruptcy petition, Plaintiffs listed as secured claims, Account Nos. XXXX6261 and

XXXX0008 (the "Accounts") with the creditors identified as HVC Highlands LCC and the Hyatt Residence Club. Also filed with their bankruptcy petition, Plaintiffs filed a mailing matrix ("Mailing Matrix") which provided Defendants' correct addresses.

7. A true and correct copy of relevant portions of Plaintiffs' Schedule "D" is attached hereto as Exhibit "A."

8. On Schedule C-1 filed with Plaintiff's bankruptcy petition, Plaintiffs' listed the "Timeshare" as real property that "is to be surrendered by the debtor." In addition, on Plaintiff's Chapter 13 Plan, also filed on February 28, 2020, Plaintiffs listed in section "3.6 Surrender of Property," both creditors HVC Highlands LLC and the Hyatt Residence Club as claimants with collateral, described as "Timeshare," that were to be surrendered.

9. True and correct copies of relevant portions of Plaintiffs' Schedule C-1 and Chapter 13 Plan are attached hereto as Exhibits "B" and "C," respectively.

10. On or about March 5, 2020, the Clerk of the Bankruptcy Court for the Eastern District of Texas ("Bankruptcy Court") mailed out the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to all creditors, including Defendants and other parties based on the Mailing Matrix, which constituted formal notice to RCA and Hyatt of the Bankruptcy Case. The 341 Notice warned all creditors, including Defendants, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to RCA or Hyatt, so there is a presumption that these 341 Notice mailings were received.

11. At no time did either of the Defendants file a proof of claim in Plaintiffs' Bankruptcy Case.

12. On May 15, 2020, Plaintiffs' Chapter13 Plan was confirmed by the Bankruptcy Court and the Clerk of the Bankruptcy Court sent out a copy of the Order confirming Chapter13 Plan to all creditors including the Defendants.

**B.    During the Bankruptcy Case, Defendants Engaged in *In Personam* Debt Collection Actions Against Plaintiffs in Violation of the Automatic Stay.**

13. During the pendency of the Bankruptcy Case, Defendants engaged in debt collection activity against Plaintiffs personally by continuing its collection actions against Plaintiffs on the Accounts, as if the debt on the Accounts was still collectible against Plaintiffs during their bankruptcy.

### 1)    Defendants Continued to Send Monthly Statements and Letters to Plaintiffs.

14. Defendant has, since the filing of Plaintiffs' Bankruptcy Case, sent Plaintiffs letters and monthly billing statements with detachable payment coupons and return envelopes on the Account(s), demanding an "Amount Due," stated in a specified dollar amount, by a specific "Due Date," and which charged or threatened to charge Plaintiffs late fees. The statements also include instructions on how to make payments. In response to receiving these letters and billing statements, Plaintiffs repeatedly called Defendant Hyatt and informed it they had filed for bankruptcy relief, provided them with the Bankruptcy Case number and their bankruptcy attorney's contact information, and asked that they cease and desist sending them any such letters and statements. Each time Plaintiffs called, the representative for Defendants acknowledged they knew of the bankruptcy and couldn't explain why correspondence and statements were still being sent.

15. For example, on or about April 22, 2020, Hyatt Portfolio Services, Inc., as agent for Defendant Hyatt, sent Plaintiffs a past due reminder letter with multiple instructions on making a payment, advising them that "…we have not received your 3/15/2020 loan payments in the amount $559.18, including late charges for your loan account" and asks Plaintiffs to "contact our

**CORE ADVERSARY PROCEEDING COMPLAINT FOR CIVIL CONTEMPT AND DAMAGES - Page 4**

office upon receipt of this letter…" The letter goes on to state: "…this communication is made in an attempt to collect a debt and any information obtained will be used for that purpose."

16. A true and correct redacted copy of the April 22, 2020 letter is attached hereto as Exhibit "D."

17. On or about April 24, 2020, H.I. Resort Condominium Association, Inc., through its agent HV Global Management Corporation ("HV Global"), sent Plaintiffs a "DENIAL OF USE NOTICE" letter representing that $2,216.85, including interest, late fees, costs and any unpaid real estate taxes, was past due on Plaintiffs' Hyatt Vacation Ownership timeshare and that Plaintiffs could not use the timeshare until this sum was paid. The letter includes instructions on making payment by phone, website, and instructions on mailing a check. The letter goes on to state: "…this communication is made in an attempt to collect a debt and any information obtained will be used for that purpose." The letter further warns in bold, underlined text: "PLEASE BE ADVISED THAT THE ASSOCIATION MAY FORWARD YOUR DELINQUENT ACCOUNT TO A COLLECTION AGENCY. IN THE EVENT OF SUCH ACTION, IN ACCORDANCE WITH CALIFORNIA LAW AND THE GOVERNING DOCUMENTS, YOU WILL BE LIABLE FOR ALL COSTS OF COLLECTION, INCLUDING REASONABLE COLLECTION AGENCY FEES AND REASONABLE ATTORNEYS' FEES, AND A LIEN ON YOUR VACATION OWNERSHIP INTEREST MAY RESULT THEREFROM." Additionally, the letter states in bold text: "To reinstate your use rights, and to avoid placement of a lien on the Vacation Ownership Interest, full payment of the Past Due Amount is hereby demanded immediately."

18. A true and correct redacted copy of the April 24, 2020 letter is attached hereto as Exhibit "E."

19. On or about December 14, 2020, HV Global sent Plaintiffs a regular statement, complete with a detachable payment coupon and return envelope, for Assessment/Billing Date:

12/14/20 indicating that there is a past due balance of $2,579.37, stating that "Payment is due upon receipt…"  Attached with the letter is an H.I. Resort Condominium Association, Inc. "ASSESSMENT, BILLING AND COLLECTION POLICY" insert warning that a lien might be asserted, and the account might be sent to a "professional collection agency" with the cost of such a referral to be "(up to 33%)," as well as any "[c]ost of legal notice letter" to be added to the owners' account.

20. A true and correct redacted copy of the December 14, 2020 statement is attached hereto as Exhibit "F."

21. On or about December 22, 2020, Hyatt sent a regular statement complete with a detachable payment coupon and return envelope, representing that the sum of $3,255.08, which includes a late fee balance of $200, was due and payable by January 15, 2021.  A note indicates "If Received After Jan 29, 2021 Pay $3,280.08."

22. A true and correct redacted copy of the December 22, 2020 letter is attached hereto as Exhibit "G."

**2)    Defendants Made Collection Calls to Plaintiffs.**

23. Defendants called Plaintiffs on numerous occasions while their Bankruptcy Case was pending, demanding payment from them on the Account(s).  In response to these calls, Plaintiffs informed Defendants that they had filed for bankruptcy relief, provided them with the Bankruptcy Case number and their bankruptcy attorney's contact information, and asked them to quit calling them and not to send them statements and correspondence.  Each time, the representative for Defendants acknowledged they knew of the bankruptcy and couldn't explain why correspondence and statements were still being sent.

24. Specifically, on or about March 4, 2020, a representative of Defendant(s) called Plaintiffs' cell phone from 1-407-393-9321 about the Account(s).

25. On or about March 9, 2020, a representative from "Hyatt Vacation" called Plaintiffs' cell phone from 1-831-620-6218 about the Account(s).

### 3) Plaintiffs Sent Defendants A Cease and Desist Letter.

26. On or about August 6, 2020, Plaintiffs sent Defendant Hyatt a letter reminding it of the Bankruptcy Case, that the timeshare had been surrendered, and that all future correspondence should be going to their attorneys.

27. A true and correct redacted copy of the letter dated August 6, 2020 Plaintiffs sent to Defendant Hyatt is attached hereto as Exhibit "H."

28. At all relevant times, Defendants knew and had actual knowledge that Plaintiffs were debtors in a bankruptcy case, protected from any direct or indirect collection acts from creditors and debt collectors by virtue of the automatic stay provided in 11 U.S.C. §362.

29. Notwithstanding such knowledge, Defendants willfully continued to try to collect on the Account(s) from Plaintiffs *in personam* even though they had not filed deficiency proofs of claim and knew any claim they had on the Account(s) had been denied pursuant to the confirmed Chapter 13 Plan.

30. Defendants were aware that their collection activities would and did damage Plaintiffs and their ability to enjoy life and their fresh start guaranteed by the U.S Bankruptcy Code.

## V. GROUNDS FOR RELIEF

### VIOLATIONS OF THE AUTOMATIC STAY

31. Plaintiffs repeat, re-allege, and incorporate by reference all previous paragraphs above, as if set forth herein in their entirety.

32. At all times material to this proceeding, Defendants had actual knowledge of Plaintiffs' Chapter13 bankruptcy filing and the automatic stay prohibiting collection actions against a debtor during such debtor's pending bankruptcy proceeding.

33. Defendants failed to cease its debt collection activity when it became aware that Plaintiffs filed for bankruptcy protection by: 1) continuing to send monthly statements; 2) sending periodic demand letters; and 3) making collection calls to Plaintiffs.

34. Defendants' aforesaid actions are willful acts and constitute efforts to collect a debt from Plaintiffs in violation the automatic stay of 11 U.S.C. § 362. Defendants' failure to comply with the aforesaid laws in light of being on notice of Plaintiffs' pending Bankruptcy Case illustrates its contempt for federal law, the automatic stay and this Court.

35. The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Court as they concern the Chapter13 bankruptcy filed by Plaintiffs. With this prima facie showing, the duty is on Defendants to show, as the only defense, a present inability to comply with the orders and injunctions of the Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Court by Defendants, Plaintiffs must prevail on their claims and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court in regard to the bankruptcy filed by Plaintiffs. Any defense put forth by Defendants in this adversary proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and action of Defendants. Any allegation of a good faith exception should not be allowed.

36. The automatic stay of the Bankruptcy Court cannot be waived, except by the virtue of a motion to lift the automatic stay and order granting such motion.

37. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to violations of the orders and injunctions of the Court. Any attempt to burden Plaintiffs with policing the misconduct of Defendants would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendants in this adversary proceeding can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendants. No allegation of mitigation as a defense should be allowed.

## VI.    DAMAGES

38. 11 U.S.C. § 362 and the lawful injunctions pursuant to 11 U.S.C. § 105 require that one injured by a willful violation of the orders and injunctions of the Bankruptcy Court be awarded actual damages. These damages include not only reimbursement for financial injury, but compensation for non-financial injury as well. Further, the Court may award a plaintiff punitive damages under the appropriate circumstances.

39. The conduct of Defendants has substantially frustrated the automatic stay in effect and Confirmation Order and has cost Plaintiffs unnecessary time, effort and expense in seeking to enforce their rights to the protections of the automatic stay. As a result of the actions and inactions of Defendants, Plaintiffs have been deprived of part of their fresh start and cannot look forward to a clear field for future endeavors.

40. Damages should be awarded in this case not only to compensate for the losses or injuries presumed and sustained by Plaintiffs, but also to coerce Defendants into compliance with

the orders issued by this Bankruptcy Court and other bankruptcy courts in which Defendants may come into contact.

41. Neither cost-benefit analysis nor proportionality is allowed in determining any element of damages awarded with the exception of punitive damages sought.

42. An award of damages to cover the value of any loss, any out-of-pocket expenses or costs incurred, including the value of the personal time of Plaintiffs in having to deal with the conduct of actions of Defendants, and in having to participate in this adversary proceeding is required.

43. Damages for Plaintiffs' emotional distress and mental anguish caused by Defendants' violations of the Court's automatic stay are recoverable, because actual damages include these types of economic and non-economic harm.

44. Plaintiffs' emotional distress is significant in that it is not and was not fleeting, inconsequential or trivial from Plaintiffs' perspective. This is evident from the fact that the filing of their Bankruptcy Case was Plaintiffs' attempt to alleviate the otherwise insurmountable social and economic problems they faced, as well as to preserve the dignity they held for themselves. A failing in the effectiveness of the automatic stay that was promised to Plaintiffs caused them emotional distress and mental anguish that Plaintiffs originally intended to halt to return and intensify.

45. This emotional distress and mental anguish is distinct from the anxiety and pressures inherent with filing a Chapter13 bankruptcy, in that the bankruptcy process was intended to take the pressure off of Plaintiffs from having to deal with the very actions and conduct of Defendants complained of here, and therefore, the actions and conduct of Defendants cannot be deemed inherent in the bankruptcy process.

46. Due to Defendants' conduct, Plaintiffs were forced to hire counsel and their damages include reasonable attorney's fees incurred in prosecuting this claim.

47. The conduct of Defendants has substantially frustrated the automatic stay in this case and has cost Plaintiffs unnecessary time, effort and expense in seeking to enforce their right to protection from creditor harassment.

48. This Court has the power to hold Defendants in contempt and issue sanctions by virtue of the Court's inherent authority to enforce its own orders, and the statutory authority set forth in 11 U.S.C. §105(a). Plaintiffs requests that the Court hold Defendants in contempt to enforce and to protect the integrity of its automatic stay.

49. Plaintiffs have been injured and damaged by Defendants' actions and is entitled to recover judgment against Defendants for actual damages in an amount not less than $10,000.00, and punitive damages in an amount not less than $10,000.00, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §362, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs David Bruce Howard and Shannon Sewell Howard pray that the Court will:

A. Find that Defendants violated the automatic stay;

B. Find that Defendants' violation of the automatic stay was "willful" as that term has been defined;

C. Sanction Defendants and award Plaintiffs actual damages for all economic, financial, non-economic and non-financial harm or injury Plaintiffs suffered as a result of Defendants' actions, including attorneys' fees, costs and expenses;

D. Find Defendants in contempt for violating the automatic stay;

E. Sanction and award Plaintiffs damages necessary to coerce Defendants into compliance with this Court's orders, as well as the orders of other bankruptcy courts in which Defendants may come into contact;

F. Award Plaintiffs, and for the benefit of the undersigned attorneys, all of their attorney's fees, costs and expenses incurred in prosecuting this adversary proceeding; and

G. Grant such other and further relief, in equity or in law, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

*/s/James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS